## Carlo Attruia *v.* Aniello Attruia

Brown, C. J., Baldwin, Inglis, O'Sullivan and Cornell, Js.

Argued May 7—decided June 23, 1953

*James F. Rosen,* with whom, on the brief, was *Richard Belford,* for the appellant (plaintiff).

*Harold E. Drew,* with whom were *Richard H. Spencer* and, on the brief, *Charles A. Watrous,* for the appellee (defendant).

BALDWIN, J. The plaintiff brought an action under § 3796 of the General Statutes to recover wages for overtime work claimed to be due him from the defendant by virtue of chapter 180 of the General Statutes, known as the Minimum Wage Act. The defendant answered denying liability under the act and alleging that part of the plaintiff's claim was barred by the Statute of Limitations, and he counterclaimed for a debt of $103.21. The plaintiff admitted this debt to the defendant. The court rendered judgment for the defendant on the complaint, and on the counterclaim to recover $131.95 damages. The view which the court took of the case made it unnecessary to consider the defense of the Statute of Limitations. The plaintiff has appealed.

The appeal raises questions of the interpretation of the Minimum Wage Act and the order issued pursuant thereto establishing minimum fair wage rates for adult males employed in mercantile trade. These questions have not heretofore been before this court. The act provides generally that the labor commissioner, on his own motion or on the petition of fifty or more residents of the state, may investigate the wages being paid in any occupation to ascertain whether any substantial number of persons is receiving less than a fair wage as defined by the act. Cum. Sup. 1951, §§ 829b, 830b. If it is determined that less than a fair wage is being paid, a wage board is appointed to report on the establishment of minimum fair wage rates. §§ 830b, 831b. The commissioner, if he accepts the report, must publish it, together with such administrative regulations as he deems appro-

priate, and give notice of a public hearing. After the hearing, the commissioner must approve or disapprove the report. If he approves it, he is required to make an order defining minimum fair wage rates in the occupation concerned. § 832b.

The commissioner had established minimum fair wage rates for adult males employed in mercantile trade, effective March 18, 1946, as follows: "Full time . . . Not less than $22.00 per week for 36-44 hours. Part time . . . Not less than 55 cents per hour for working time of less than 36 hours weekly." The order contained these definitions pertinent to the issues of the instant case: "The term full time employee means a person employed to work 36-44 hours per week, whether as a regular employee for a fixed or indeterminate time or as an extra employee for particular weeks. In a week in which a legal holiday occurs, 36 hours shall constitute a full week's work. . . . The term part time employee means a person who works less than 36 hours per week, whether as a regular employee or as an extra employee for a particular period." Concerning overtime, the order stated: "Time worked by an employee in excess of 44 hours per week shall be paid for, at least at one and one-quarter the employee's regular hourly rate (except [as to] employees engaged in [an] executive capacity and receiving not less than . . . $50.00 a week)." As to the matter of computing the hourly rates, the order contained this language: "The hourly rate of a full time employee shall be computed by dividing the employee's weekly wage by 44 hours unless the employee's regular work week is less, then to establish the hourly rate, divide by the number of hours in the regular work week." The act provides that any employee who receives less than the minimum fair wage prescribed may recover from

his employer, in a civil action, the difference between the minimum and what he has actually received. General Statutes § 3796. It is to be noted that the claim in the instant case arises under the act as it was prior to the 1951 amendments and under an order issued by the commissioner pursuant to the terms of that act.

The finding of the trial court, which is not subject to correction, may be summarized as follows: The defendant owned a market in Seymour where he sold groceries, meats, fruits and vegetables at retail. He was subject to the Minimum Wage Act. On May 15, 1947, he entered into an agreement with his brother, the plaintiff, an adult male, under which the plaintiff was to work in the defendant's market each week on Monday, Tuesday, Thursday and Saturday from 7 a.m. to 7 p.m.; on Wednesday from 7 a.m. to 1 p.m.; and on Friday from 7 a. m. to 9 p.m. He was to have one hour for lunch each day excepting Wednesday. The total hours to be worked each week were 63, for which the plaintiff was to receive, and did receive, $50 weekly. The defendant also paid the plaintiff's social security tax. The plaintiff was to have certain food supplies at cost and food for his lunch. He received these benefits, but the court made no finding as to their value. Before going to work for the defendant, the plaintiff was employed with the Rockbestos Company at an hourly rate of $1.07 for a 40-hour week, for which he received gross pay of $42.80. His employment with the defendant began on May 16, 1947, and continued to December 19, 1949. During this time he never worked more than 63 hours in any one week. The trial court found that the minimum wage rate established by the commissioner's order was $.50 an hour for the first 44 hours and $.625 an hour for each hour in excess

of 44. It found further that the plaintiff was not a full-time employee as defined in the order but an employee engaged under a contract of employment to work longer hours for a fixed weekly wage. The hourly rate the plaintiff was paid was computed at $.738 for the first 44 hours and $.9225 for the 19 hours of overtime. The court concluded, therefore, that the minimum hourly rates paid the plaintiff for regular time and overtime were more than the minimum rates established by the order. In this connection, we call attention to an amendment of the act in 1951, subsequent to the period for which the plaintiff makes claim, which established a minimum rate of 75 cents an hour. Cum. Sup. 1951, § 830b.

The Minimum Wage Act is not a wage and hour law. It purports to do no more than establish a minimum hourly wage in those occupations that are subject to its terms. In *Swiss Cleaners, Inc.* v. *Danaher,* 129 Conn. 338, 342, 27 A.2d 806, we held that the "purpose of [the] act is to enable a minimum wage scale to be adopted and to be put into effect as regards any 'sweat shop occupation,' defined as 'an industry, trade, business or occupation which pays to its employees an unfair and oppressive scale of wage in which persons are gainfully employed.'" The statute was fashioned to deal with the problem of low wages in a large number of miscellaneous businesses and occupations. It was not designed to prescribe the minimum number of hours which any person should work in any one week but to establish a minimum hourly rate for the hours worked. That is apparent from the order issued by the commissioner and applicable to the instant case. That order fixed the rate at $22 for a week of 36-44 hours, the shorter hours being applicable to a week in which there was a holiday. The hourly rate was thus estab-

lished at 50 cents. For those who worked less than 36 hours, a minimum hourly rate of 55 cents was fixed. The designation of a 36-44 hour week was necessary to set a standard. Those working less than the standard were defined as part-time workers. Full-time workers were defined as those who worked the standard number of hours. Those working longer than the standard number of hours were entitled to overtime.

The plaintiff claims that he was a full-time employee as defined by the order. Therefore, he argues, his hourly rate should be computed by dividing his weekly wage by 44 hours, which was the standard work week for a full-time employee. He claims that in addition thereto he should receive one and one-quarter times this hourly rate for each hour over 44. He seeks to recover the difference between the weekly wage thus computed and that which he actually received. The plaintiff, however, was not employed to work a standard work week. His contract of employment called for a work week of 63 hours. It is neither necessary nor reasonable to adopt the plaintiff's contention that under the statute a contract of employment for a week's work in excess of 44 hours for a weekly wage was, by law, a contract to work 44 hours and no more for the same wage.

While under certain circumstances hours of employment can be regulated, we are not concerned with that question in the case before us. The only issue is the proper interpretation of the act and the order issued pursuant to it. Where two different interpretations are possible, it is the duty of the court to adopt that which leads to a reasonable and just result rather than one which does not. It is to be presumed that the General Assembly, in enacting this law, intended it to accomplish reason and justice. *Camp* v.

*Rogers,* 44 Conn. 291, 298; *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 A. 25; *State ex rel. Stamford* v. *Board of Purchase & Supplies,* 111 Conn. 147, 161, 149 A. 410; *Guhring* v. *Gumpper,* 117 Conn. 548, 552, 169 A. 189; *Rowland* v. *Hayes,* 124 Conn. 129, 139, 198 A. 337. We cannot attribute an intent to vest the commissioner with power to go far beyond the scope of the purposes of the act in promulgating orders for its enforcement and so raise grave doubts as to its constitutionality. *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195; *DeMond* v. *Liquor Control Commission,* 129 Conn. 642, 645, 30 A.2d 547; *Blakeslee* v. *Board of Water Commissioners,* 106 Conn. 642, 663, 139 A. 106. The order issued by the commissioner provided for a minimum of 50 cents an hour with one and one-fourth the hourly rate for all overtime above 44 hours. The question is whether a weekly wage of $50 for 63 hours met the minimum requirements for 44 hours as well as for overtime. To determine this, the trial court first computed the total number of hours for which the plaintiff was entitled to compensation under the order. It added to the 44-hour standard 19 hours of overtime figured at time-and-a-quarter, or 23.75 hours, making a total of 67.75 hours. It used this figure, rather than 44 hours, as the divisor to determine the regular hourly rate, which, so computed, was $.738. Since the plaintiff was entitled to one and one-fourth the hourly rate for the 19 hours of overtime, it figured the overtime hourly rate at $.9225. These rates are, respectively, in excess of the $.50 and the $.625 minimum prescribed by the order. The trial court's interpretation of the statute and the order was correct.

Since there is no finding which properly presents the rulings on evidence of which the plaintiff complains, we disregard the assignment of errors relat-

ing to them. *Krauss* v. *Crawford,* 133 Conn. 430, 432, 52 A.2d 1; *Deacy* v. *McDonnell,* 131 Conn. 101, 106, 38 A.2d 181; Practice Book § 405; Maltbie, Conn. App. Proc., § 87. The plaintiff also complained of the failure of the defendant to keep records of the plaintiff's employment as required by General Statutes, § 3795 (c) (as amended, Cum. Sup. 1951, § 837b). This failure plays no part in the determination of the case because the trial court has found the number of hours which the plaintiff worked and the rate of his wages. The imposition of the penalty provided for by the statute is a matter to be instituted by the commissioner.

There is no error.

In this opinion the other judges concurred.