ROBERT A. KRASNOW *v.* FLORINDA B. KRASNOW

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, Js.

Argued June 10—decided August 4, 1953

*Saul Seidman,* with whom was *Richard Levin,* for the appellant (plaintiff).

*Jacob Bresnerkoff,* with whom was *Samuel Freed,* for the appellee (defendant).

BALDWIN, J. This is an action for divorce in which a judgment had been entered granting the divorce to the plaintiff and awarding custody of their minor son to the defendant. The plaintiff filed two motions to modify the award. The court denied both motions and the plaintiff has appealed. The court, upon the defendant's motion, entered an order for an allowance for counsel fees and disbursements on the plaintiff's appeal. The plaintiff has also appealed the granting of this allowance. He alleges that the court erred in making the original award of custody because it lacked jurisdiction, in holding him in contempt for failing to abide by the award, in making the allowance, in rulings on the admission of evidence and in refusing to correct the finding.

The finding, which is not subject to correction, except in one particular, may be stated as follows: The plaintiff, an American citizen, married the defendant, a citizen of Brazil, in Rio de Janeiro in 1944. After residing there a short time, they came to Washington, D. C., where a son, Richard, was born in 1945. They later moved to Hartford where they lived together until August, 1950, when, with the consent of the plaintiff, the defendant, taking Richard with her, went to Brazil for a visit and became domiciled there. In November, 1950, while the defendant and Richard were still in Brazil, the plaintiff wrote her a letter, terminating in practical effect their marriage relationship and suggesting that she

stay in Brazil. The plaintiff attempted to have the defendant send Richard back to Hartford but did not ask her to return. In January, 1951, the plaintiff brought an action, returnable to the Superior Court in Hartford County, claiming a divorce and the custody of Richard. Service was made upon the defendant by registered mail. In May, 1951, the defendant appeared in, and submitted to the jurisdiction of, the court.

The parties entered into a stipulation which provided that the defendant should have the custody of their child, with the right in the plaintiff to have Richard visit him at his residence each year during the school vacation. It further stipulated that the plaintiff should pay to the defendant $3100 for the support of their son, $1000 to be paid forthwith and the balance of $2100 when he made his first visit to the plaintiff, with a further sum of $17 a week during his minority. A judgment for a divorce on the ground of intolerable cruelty was entered in favor of the plaintiff on May 25, 1951, and the stipulation concerning custody and support was incorporated in the judgment file. Before the plaintiff signed the stipulation, his counsel explained it to him and he understood the meaning and consequences of it. The trial court, before entering judgment, inquired whether the agreement concerning custody was for the best interest of the child and was assured by counsel that the parties had agreed that it was.

The plaintiff remarried in June, 1951, that being his third marriage, while the defendant has remained unmarried. In December, 1951, the defendant sent Richard from Brazil to visit his father. The boy was to return on March 8, 1952, but the plaintiff decided not to send him back. On March 13, the defendant caused a citation for contempt to be issued against

the plaintiff. On March 14, the plaintiff filed a motion for a modification of the judgment pertaining to custody. Richard continued to reside with the plaintiff. While in Brazil, Richard lived with his mother in Rio de Janeiro, in the same apartment which she and the plaintiff had occupied after their marriage. The plaintiff was familiar with what the living conditions and surroundings of the child would be when he entered into the stipulation concerning his custody. Richard attends a private school in Rio de Janeiro at a cost of $170 a month, which is in excess of the support paid by the plaintiff. The defendant has been required to work to support her son. There has been no change in the circumstances of either of the parties warranting a modification of the order of custody. The defendant is without funds to pay counsel on the appeal and the plaintiff is financially able to provide therefor.

The trial court, on April 24, 1952, denied the plaintiff's motion for a modification of the order of custody and held him in contempt for his failure to comply with it. On June 4, 1952, the defendant filed a motion to modify the judgment as to custody, in which she recited that Richard was living with her in Brazil. She asked that the child be permitted to remain with her, with the right in the plaintiff to visit him there. She also moved for an allowance of counsel fees and disbursements on the plaintiff's appeal. The court allowed $500 counsel fees and actual disbursements. On June 20, the plaintiff filed a motion to reopen and modify the judgment entered on April 24, which the court denied.

The plaintiff's first contention is that the court was without jurisdiction to make any award of custody because the child was not a resident of, or domiciled in, this state at the time the divorce action was begun

or the judgment entered. The statute provides that on "any complaint for a divorce, the court may, at any time, make any proper order" concerning the custody of minor children. General Statutes § 7337. Jurisdiction to award custody is acquired by virtue of the original action and is incidental to it. *Dunham* v. *Dunham,* 97 Conn. 440, 444, 117 A. 504. The defendant having submitted to the jurisdiction of the court, the whole matter of the marital status of the parties and the effect of any change therein upon minor children was before the court. *Fagan* v. *Fagan,* 131 Conn. 688, 690, 42 A.2d 41; *Maloney* v. *Maloney,* 67 Cal. App. 2d 278, 280, 154 P.2d 426; *Stephens* v. *Stephens,* 53 Idaho 427, 437, 24 P.2d 52; *Talbot* v. *Talbot,* 120 Mont. 167, 173, 181 P.2d 148; *Wilson* v. *Wilson,* 66 Nev. 405, 212 P.2d 1066, 1072; *Anderson* v. *Anderson,* 74 W. Va. 124, 126, 81 S.E. 706. *Boardman* v. *Boardman,* 135 Conn. 124, 62 A.2d 521, on which the plaintiff mainly relies, is not in point. In that case the defendant, who was residing in Connecticut with her child, was not served in New York, where the action was brought, nor did she submit to its jurisdiction by entering an appearance. Furthermore, one such as this plaintiff, who has invoked the jurisdiction of the court in order to secure a divorce and the custody of a minor child, cannot thereafter assail it. *Morrill* v. *Morrill,* 83 Conn. 479, 489, 77 A. 1; *Blair* v. *Blair,* 48 Ariz. 501, 507, 62 P.2d 1321; 3 Freeman, Judgments (5th Ed.) § 1438; 27 C.J.S. 815. The trial court's denial of the plaintiff's motions to modify the award contained in the original judgment and to erase the citation for contempt based thereon, upon the ground of lack of jurisdiction, was correct.

The plaintiff's second contention is that the court, having jurisdiction of his motion for a modification

of the award, in passing upon it should have determined what was for the best interest of the child, irrespective of the stipulation concerning custody which was incorporated in the original decree. He contends that the court should have received the evidence which he offered bearing upon this issue. There is no question that the court had jurisdiction to modify the award of custody. General Statutes §§ 7337, 7339; *Fagan* v. *Fagan,* 131 Conn. 688, 690, 42 A.2d 41; *Morrill* v. *Morrill,* supra, 484. No agreement of the parties could preclude the court from making a modification where the best interest of the child required it. *Lilley* v. *Lilley,* 125 Conn. 339, 343, 5 A.2d 849; *Hendricks* v. *Hendricks,* 69 Idaho 341, 346, 206 P.2d 523; *Kane* v. *Kane,* 314 Mich. 529, 533, 22 N.E.2d 773; *Wright* v. *Stahl,* 73 S.D. 157, 160, 39 N.W.2d 875; 27 C.J.S. 1177. In matters of custody, the paramount consideration is always the welfare of the child. *Kelsey* v. *Green,* 69 Conn. 291, 298, 37 A. 679; *Bailey* v. *Mars,* 138 Conn. 593, 600, 87 A.2d 388. However, the rulings on evidence which the plaintiff challenges are not properly presented by the finding. Practice Book § 405; *Attruia* v. *Attruia,* 140 Conn. 73, 79, 98 A.2d 532. That aside, the plaintiff, claiming that he was acting for the welfare of his son, offered evidence concerning circumstances and conditions bearing upon the fitness of the defendant to have custody which antedated the judgment and the stipulation. What the plaintiff was really asking the court to do was to reconsider a matter already disposed of and concerning which no new conditions had since occurred. *Lilley* v. *Lilley,* 125 Conn. 339, 342, 5 A.2d 849; *Maupin* v. *Maupin,* 339 Ill. App. 484, 493, 90 N.E.2d 234; *Scott* v. *Scott,* 227 Ind. 396, 404, 86 N.E.2d 533; Keezer, Marriage & Divorce (3d Ed.) p. 764. The court had thoroughly

tried the question of the boy's custody. We cannot say that it abused its discretion in refusing to allow the plaintiff to show that the representations which he made, before the judgment was entered, concerning the fitness of the defendant to have custody were untrue.

The plaintiff claims that the court erred in making an allowance to the defendant for counsel fees and disbursements upon his appeal. While an action for divorce is a creature of statute, it is essentially equitable in its nature. *German* v. *German*, 122 Conn. 155, 161, 188 A. 429; 125 Conn. 84, 86, 3 A.2d 849. "The basis of the allowance [to a wife for expenses of divorce litigation] is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife, she has a real interest but which is usually within the control of the husband." *Steinmann* v. *Steinmann*, 121 Conn. 498, 505, 186 A. 501; *Valluzzo* v. *Valluzzo*, 104 Conn. 152, 156, 132 A. 406; *Morgan* v. *Morgan*, 104 Conn. 412, 415, 133 A. 249; *Marino* v. *Marino*, 136 Conn. 617, 620, 73 A.2d 339. Under the common law of England and of most of the states of the union, the power to make an allowance for counsel fees and expenses of litigation in matters pertaining to actions for divorce is inherent in the court. *Petrie* v. *People*, 40 Ill. 334, 340; Keezer, Marriage & Divorce (3d Ed.) § 601. While a judgment for divorce terminates the respective obligations of the husband and wife to live together, there are, nevertheless, duties and responsibilities which arose by reason of the marriage relation and which survive the decree. Thus the court may make an award of alimony to be paid from the husband's income which it has the continuing power to enforce and modify. General Statutes § 7335; *Christiano* v. *Christiano*, 131 Conn. 589, 592,

596, 41 A.2d 779. The same holds true as to the award of the custody of a child during his minority. General Statutes §§ 7337, 7339; *Fagan v. Fagan,* 131 Conn. 688, 690, 42 A.2d 41; *Morrill v. Morrill,* 83 Conn. 479, 485, 77 A. 1. Where, in a divorce action, custody of a minor child is awarded to the wife, and the husband refuses to recognize her right thereto under the decree and seeks to have the court reverse or modify it, in order to ensure that justice is done the court may require that he provide her with the means for her defense, if she is without such means. *McDonald v. McDonald,* 124 Mont. 26, 32, 218 P.2d 929; *Spratt v. Spratt,* 151 Minn. 458, 465, 187 N.W. 227; *Chambers v. Chambers,* 75 Neb. 850, 856, 106 N.W. 993; *Crooks v. Crooks,* 197 S.W.2d 686, 687 (St. Louis Ct. App.); *Strauch v. Strauch,* 196 Okla. 184, 186, 164 P.2d 220. The fact that there is no statute providing for an allowance in a divorce action is not decisive. The question is whether the power to make an allowance continues after the original decree, regardless of whether that power is inherent in the court, as some of the cases hold, or is granted by statute. As the jurisdiction of the court to modify the decree in matters of alimony and custody is a continuing one, so too, in reason and justice, is its power to make an allowance when these matters are again in issue after the final decree.

The interest which the state has in every divorce action, particularly where minor children are involved, is further reason for adopting this procedure in order to ensure a full presentation of the case. *Morgan v. Morgan,* 104 Conn. 412, 414, 133 A. 249. Whether to allow counsel fees, and if so in what amount, is a matter which, like the fixing of alimony, calls for the exercise of a judicial discretion. *Felton v. Felton,* 123 Conn. 564, 567, 196 A. 791; Keezer,

Marriage & Divorce (3d Ed.), p. 676. The court found that the defendant was without funds to pay counsel fees on the appeal and that the plaintiff was financially able to do so. We cannot say, upon the record, that the court abused its discretion in the allowance which it made.

There is no error.

In this opinion BROWN, C. J., O'SULLIVAN and CORNELL, Js., concurred.

INGLIS, J. (dissenting in part). I concur in all of the conclusions of the opinion except that relating to the order allowing counsel fees to the defendant on the appeal. With that, I disagree. The exact question involved is whether, after a husband and wife have been divorced, he may be made liable for his former wife's counsel fees in resisting his application for modification of the custody order contained in the judgment.

In considering the authorities on this subject in other jurisdictions it must be borne in mind that in this state we have no statute which authorizes the making of allowances for counsel fees in divorce actions. Such allowances here are based on the common law. All of the cases cited in the opinion as holding that an allowance may be made to a divorced wife after the rendition of final judgment of divorce, in connection with an application for modification of the judgment for the custody of children, with the possible exception of *Strauch* v. *Strauch, 196 Okla. 184, 186, 164 P.2d 220,* are decided under statutes. These statutes specifically authorize the making of such an allowance during the pendency of a divorce action and the only question for the decision of the court was whether, in view of the fact that the court had continuing jurisdiction to modify

its decree relating to custody, the action was still pending under the statute. Clearly, these cases are no authority to support the making of an allowance in a state where there is no statute providing for it and where the divorced wife's right to it must rest in common law.

Even in states where statutes expressly give the courts power to order allowances during the pendency of the action, there is good authority to the effect that such statutes do not apply to proceedings relating to the custody of children which are had after final judgment of divorce. *Wallace* v. *Wallace,* 273 Mass. 62, 64, 172 N.E. 914; *Lake* v. *Lake,* 194 N.Y. 179, 185, 87 N.E. 87. These cases rest upon the reasoning that since the divorce decree has terminated the relationship of husband and wife, the husband has no further obligation to finance his former wife's litigation. So far as the reasoning of these cases is concerned, therefore, they offer support for the position that, at common law, the former husband may not be compelled to pay his divorced wife's counsel fees in proceedings for change in the custody of their children.

In Connecticut the question has never before been decided. The closest that we have come to a decision of it is a dictum in *Morgan* v. *Morgan,* 104 Conn. 412, 417, 133 A. 249. We there said, after referring to several cases in other jurisdictions which upheld the power of the court to make allowances to defend prior to the final judgment of divorce: "As we read them, none of those cases go so far as to hold that the allowance can be made after the entry of a strictly final judgment. Even where the question is not a jurisdictional one, as in the instant case, it is the general rule that an allowance will not be granted after the appeal has gone to a final decision."

The basis in this state upon which allowances to defend or prosecute a divorce action or to prosecute or defend an appeal from a divorce decree have been made to a wife is well stated in *Steinmann* v. *Steinmann*, 121 Conn. 498, 504, 186 A. 501: "An allowance to a wife for expenses of litigation in a divorce action had its origin in the complete control which until recent times the husband had over all property, not only that which was his own but also that which his wife had at the time of the marriage or which she might acquire during coverture. While the changes in the rights of married women now permit them to own property in their own right and largely dispose of it as they will, it still remains true that usually the control of the property to which the wife looks for support rests with the husband. The basis of the allowance is that she should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife she has a real interest but which is usually within the control of the husband."

It is a fundamental principle in our jurisprudence that ordinarily one litigant is not to be called upon to pay the litigation expenses of his adversary except to the extent that the statute may provide indemnity to a winning party by way of taxable costs. The common-law rule permitting the making of allowances to wives for counsel fees in divorce actions is an exception to the general principle. I can see no justification for extending the exception to situations which do not fall within the reason for the rule.

When a judgment of divorce becomes final the relationship of husband and wife is terminated. The man is no longer responsible for the woman's support. Whatever rights the woman had for support or whatever rights she had, by virtue of the marriage,

to the property standing in the man's name have been merged in the award of alimony and have ceased to exist. After the divorce it can no longer be assumed that she has any right in, or even the color of a claim to, that property. The two are separate and distinct persons, each owning his or her property independently. Consequently, the real reason which justified the making of an allowance so long as they remained husband and wife no longer applies. If the reason upon which the common-law rule is based does not exist after the marriage has been terminated, it is obvious that the rule should not be extended to compel the former husband to finance the former wife's litigation even though that litigation concerns the custody of their children.

This line of reasoning is supported by cases in other jurisdictions in which the courts quite uniformly have decided, independently of statute, that, after divorce, the former wife is not entitled to an allowance from the former husband in proceedings relating to the modification of the provisions for custody in the divorce decree. *McKinley* v. *McKinley,* 241 Ala. 245, 246, 2 So.2d 451; *Nelson* v. *Nelson,* 146 Ark. 362, 367, 225 S.W. 619; *Carter* v. *Carter,* 156 Md. 500, 507, 144 A. 490; *Robinson* v. *Robinson,* 112 Miss. 224, 225, 72 So. 923. I am satisfied that the court erred in ordering the allowance of counsel fees in the present case.